| | |
|---|---|
| ROBERT WOOD, <br><br> Petitioner, <br><br> v. <br><br> HEIDI LACKNER, <br> CDCR SCC Warden, <br><br> Respondent. | No. 1:15-cv-00945-DAD-SKO HC <br><br> **FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND DECLINE TO ISSUE CERTIFICATE OF APPEALABILITY** <br><br> **(Doc. 1)** |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Petitioner, Robert Wood, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges violations of his constitutional rights based on a disciplinary hearing conducted at the California Department of Corrections and Rehabilitation ("CDCR"), Sierra Conservation Center ("SCC").

**I.      Factual and Procedural Background**

In 2013, the Los Angeles County Superior Court sentenced Petitioner to four years' imprisonment for identity theft (Cal. Penal Code § 530.5). Petitioner is incarcerated in the SCC.

On December 28, 2013, Correctional Officer Lopez ("CO Lopez") was searching an inmate housing unit. CO Lopez found personal letters identifying Petitioner in locker number 42-14L. When CO Lopez searched the bed that corresponded with locker 42-14L, she found a large

1

bag with approximately two gallons of orange liquid, which she identified as inmate manufactured alcohol, sitting on top of the mattress. CO Lopez filled out a "Serious Rules Violation Report," and described the event:

> On Sunday, December 28, 2013 at approximately 0930 hours, I, [CO] Lopez, while working . . . searched the contents of bunk bed and locker assigned to 42-14L. I verified the locker and contents belonged to [Petitioner], . . ., Bed 42-14L by reviewing his personal letters to determine that the locker was assigned to [Petitioner]. I search[ed] his bed area and discovered on the mattress one big bag approximately two (2) gallons in size of liquid orange in color. The contents of the bag had a strong odor of fermented fruit known as Inmate Manufactured Alcohol AKA "Pruno." The contents of the pruno contained pieces of fruit. Due to my seven years of experience. I can confirm the liquid inside the bag was in fact Inmate Manufactured Alcohol. I spoke with [Petitioner] regarding my findings and he confirmed that the pruno belonged to him. He . . . showed me his personal property inside his locker. I disposed of the Inmate Manufactured Alcohol by pouring it down the drain on the Facility B Yard.

(Lodged Doc. 13-1 at 34.)

Petitioner was charged with violating C.C.R. § 3016(a), which states: "[i]nmates shall not inhale, ingest, inject, or otherwise introduce into their body; use, posses, manufacture, or have under their control any controlled substance, medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff."

On January 8, 2014, Senior Hearing Officer ("SHO") Loyd held a hearing on Petitioner's rule violation. (Doc. 13-1 at 37.) Petitioner pled not guilty to the charge and verified that he had received copies of the incident report. *Id*. Petitioner stated that the pruno "was not mine. I had no knowledge of it being there." *Id*. Petitioner requested and was granted the ability to question a witness at the hearing. *Id*. at 38. Petitioner called Inmate Coolbaugh as a witness and SHO Loyd had the following exchange with Inmate Coolbaugh on behalf of Petitioner:

> Q1. (SHO)                How did the wine end up in [Petitioner's] bed?
> A1. (I/M COOLBAUGH)      I put it there.

*Id*.

After questioning Inmate Coolbaugh on behalf of Petitioner, SHO Loyd asked Inmate Coolbaugh the following questions:

| | | |
|---|---|---|
| Q1. | (SHO) | When did you put the Inmate Manufactured Alcohol in [Petitioner's] Bed? |
| A1. | (I/M COOLBAUGH) | When [Petitioner] was watching T.V. |
| | | |
| Q2. | (SHO) | Where did you put it? |
| A2. | (I/M COOLBAUGH) | I put it in his mattress. |
| | | |
| Q3. | (SHO) | Why did you place it in [Petitioner's] bed area (mattress)? |
| A3. | (I/M COOLBAUGH) | I had no room in my spot. |
| | | |
| Q4. | (SHO) | How would you be able to place the Inmate Manufactured Alcohol in another person[']s bed area without any repercussions? |
| A4. | (I/M COOLBAUGH) | I just did it. |

*Id*. SHO Loyd made the following observations about the inmates at the hearing:

> [d]uring questioning[,] both inmates exhibited a non-caring or less than critical attitude of the actions committed by Inmate COOLBAUGH against [Petitioner]. This line of questioning further establishes the guilt of [Petitioner] and the unbelief by this Officer [that] an Inmate could place a charge or violation on another inmate without fear of repercussion or belief such exists.

*Id.* (emphasis in original). SHO Loyd found Petitioner guilty of constructive possession of inmate manufactured alcohol:

> [Petitioner] is found **GUILTY** of a Division 'C' Offense (CCR), Title 15, § 3016(a)[1] CONSTRUCTIVE POSSESSION OF INMATE MANUFACTURED ALCOHOL. The SHO has reviewed all pertinent documentation in this instant offense and has taken [Petitioner's] "**Not Guilty**" plea and statement into consideration. The SHO feels there are more than sufficient elements present in this instant offense based upon the two inmates' interaction[s] during questioning and in the SHO['s] vast experience and time in the department[,] an inmate cannot place evidence creating a violation of the California Code of Regulations on another inmate without fear of repercussions or reprisal. This finding is based on a preponderance of evidence submitted at the hearing, which includes:

---

[1] "Inmates shall not inhale, ingest, inject, or otherwise introduce into their body; use, posses, manufacture, or have under their control any controlled substance, medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff." C.C.R. § 3016(a).

3

1. The Rules Violation Report (authored by Correctional Officer L. Lopez). . . . Due to her seven years of experience, she could confirm the liquid inside the bag was in fact Inmate Manufactured Alcohol AKA "Pruno."

2. The Rules Violation Report further states [CO] Lopez spoke with [Petitioner] regarding her findings and he confirmed that the pruno belonged to him. He . . . showed [CO Lopez] his personal property inside his locker. She disposed of the Inmate Manufactured Alcohol by pouring it down the drain on the Facility B Yard.

3. This finding is additionally substantiated by [Petitioner's] partial admission of guilt by changing his story at the hearing to state [the alcohol] belonged to Inmate COOLBAUGH and collaborating with him [to admit] that he had in fact placed it in his bed without his knowledge. At the time of the hearing[,] [Petitioner] stated, "It was not mine. I had no knowledge of it being there." This statement is completely contradictory to his admission to [CO] Lopez that it belonged to him and he was sleeping on the wrong bunk. These statements and the interaction between Inmate COOLBAUGH and [Petitioner] during the hearing and questioning by the SHO were uncharacteristic of the situation and the reversal by [Petitioner] of his guilt.

*Id*. at 38-39 (emphasis in original).

SHO Loyd found Petitioner guilty of violating C.C.R. § 3016(a) and assessed 120 days forfeiture of credits and 30 days loss of the following privileges: no telephone calls and no yard access until February 6, 2014, among other disciplinary measures. *Id*. at 39.

Petitioner appealed SHO Loyd's decision administratively and on March 27, 2014, Chief Deputy Warden Joel Martinez ruled that a preponderance of evidence supported the conclusion that the alcohol belonged to Petitioner. *Id*. at 33. On June 24, 2014, Appeals Examiner J. Benavidez also denied the appeal, finding that alcohol was discovered in a common area of Petitioner's cell and that Petitioner exercised constructive possession over the alcohol. *Id*. at 27-28.

On November 5, 2014, Petitioner filed a petition for writ of habeas corpus with the Tuolumne County Superior Court. (Doc. 13-1.) In his petition, Petitioner alleged: (1) the disciplinary decision violated his federal due process rights because it lacked evidentiary support; (2) prison officials' unauthorized policies caused him to falsely confess; (3) the reporting

4

employee failed to comply with policy regarding the identification and disposal of inmate manufactured alcohol; and (4) the hearing officer was biased. *Id*. On December 16, 2014, the Superior Court denied Petitioner's petition because "some evidence" supported the hearing officer's decision. (Doc. 13-2.)

On January 6, 2015, Petitioner filed his petition for writ of habeas corpus with the California Court of Appeal, which was summarily denied on January 16, 2015. (Docs. 13-3, 13-4). On February 11, 2015, Petitioner filed his petition with the California Supreme Court, which was summarily denied on April 22, 2015. (Doc. 13-5.)

On June 16, 2015 Petitioner filed his petition for writ of habeas corpus with this Court. Respondent filed an answer to the petition on September 24, 2015. Petitioner did not file a reply.

II. **Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

**III. The Disciplinary Decision is Not Contrary to Clearly Established Federal Law.**

Petitioner makes three allegations with regard to his disciplinary proceedings: (1) SHO Loyd's finding that Petitioner was guilty of constructive possession of inmate manufactured alcohol was unreasonable, because the decision lacked evidentiary support; (2) CO Lopez failed to follow CDCR policy governing the identification and disposal of inmate manufactured alcohol; and (3) SHO Loyd was biased. (Doc. 1.)

Respondent counters that (1) there was enough evidence to support SHO Loyd's finding; (2) whether an officer follows CDCR policy is a question of state law, not cognizable on federal habeas review; and (3) the state court properly denied Petitioner's judicial bias claim. (Doc. 13 at 6.)

**A. The Disciplinary Decision is Supported by "Some Evidence" in Accordance with Clearly Established Supreme Court Precedent.**

In his first ground for relief, Petitioner maintains SHO Loyd's finding lacked an evidentiary basis. (Doc. 1 at 21-22.) To comport with the requirements of procedural due process, prison disciplinary decisions must be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). Determining whether the "some evidence" standard has been satisfied "does not require [an] examination of the entire record, independent assessment of the credibility of witnesses, or weighing of [ ] evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary [officer]." *Id*. at 455-56 (internal citations omitted). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that

have some basis in fact." *Id*. at 456 (internal citations omitted). Although the "some evidence" standard is "minimal," it "assures that 'the record is not so devoid of evidence that the findings of the disciplinary board [are] without support or otherwise arbitrary." *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (quoting *Hill*, 472 U.S. at 457)).

Here, the evidence before SHO Loyd was sufficient to meet the requirements imposed by the Due Process Clause. In a search of Petitioner's locker and bed area, Officer Lopez found liquid that, based on her seven years of experience as a corrections officer, she determined to be inmate manufactured alcohol. (Doc. 13-1 at 34.) Officer Lopez verified the bed where she found the alcohol was occupied by Petitioner based on his personal letters, which were located in the corresponding locker. *Id*. Additionally, when CO Lopez confronted Petitioner with the inmate manufactured alcohol, Petitioner admitted that the alcohol was his. *Id*.

Although at the hearing before SHO Loyd, Petitioner presented a witness who testified that the alcohol belonged to him, SHO Loyd made a decision based on the totality of the evidence and not simply on the testimony of Inmate Coolbaugh. Even accepting Inmate Coolbaugh's testimony as true, there was "some evidence" for the Court to find that SHO Loyd's decision is properly supported, based on CO's Lopez's report and Petitioner's confession. For these reasons, Petitioner has not shown that the Superior Court's denial of his petition for habeas corpus was contrary to clearly established federal law and the Court recommends denying Petitioner's claim.

### B. Officer Lopez's Failure to Follow CDCR Policy is a Question of State Law, Which is Not Cognizable on Federal Habeas Review.

In his second ground for relief, Petitioner argues Officer Lopez did not follow CDCR policy when she failed to bring the alcohol to a Sergeant for identification and poured the alcohol down the yard drain without an official confirmation that it was alcohol. (Doc. 1 at 21-22).

Failure to follow prison policy does not constitute a violation of a federal right. *Swearington v. California Dept. of Corrections & Rehabilitation*, 624 Fed. Appx. 956, 958-59

(9th Cir. 2015) (quoting *Cousins v. Lockyer*, 568 F. 3d 1063, 1070 (9th Cir. 2009) (alleged failure to follow prison policy does not establish federal constitutional violation)). Consequently, even if Officer Lopez did not follow proper procedure in identifying and disposing of the alcohol, Petitioner cannot establish a federal constitutional violation and the Court recommends denying Petitioner's claim.

### C. The State Court Properly Denied Petitioner's Judicial Bias Claim.

In his third ground for relief, Petitioner argues SHO Loyd was biased, but does not provide any details regarding the bias or how this bias affected Petitioner's constitutional rights. (Doc. 1 at 30.) "A 'fair trial in a fair tribunal is a basic requirement of due process.'" *Withrow v. Larking*, 421 U.S. 35, 46 (1975) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). This requirement applies to administrative agencies, as well as to courts. *Id*. at 46-47 (citing *Gibson v. Berryhill*, 411 U.S. 456, 579 (1973)). However, mere allegations of bias or impartiality are not enough, on their own, to state a claim, as hearing officers are entitled to a presumption of honesty and integrity. *Id*. at 47.

Here, Petitioner alleges SHO Loyd was biased without asserting any facts. Petitioner simply asserts "[a] hearing conducted by a biased hearing officer may indeed violate a prisoner's due process rights." (Doc. 1 at 30.) This statement alone cannot form the basis of a claim for judicial bias given that hearing officers are entitled to a presumption of honesty and integrity. *Withrow*, 421 U.S. at 47. Further, nothing in the record suggests that SHO Loyd was biased against Petitioner. SHO Loyd's decision was based on the incident report prepared by Officer Lopez and the testimony at the hearing. For these reasons, the Court recommends denying Petitioner's claim of judicial bias.

## IV. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented required further adjudication. Accordingly, the Court recommends declining to issue a certificate of appealability.

## V.     Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that the Court deny the Petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 6, 2018**                      /s/ *Sheila K. Oberto*
                                                         UNITED STATES MAGISTRATE JUDGE